J-A07026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                    :           PENNSYLVANIA
                    :
v.                  :
                    :
                    :
DANIEL GANT          :
                    :
Appellant      :   No. 2141 EDA 2021

Appeal from the PCRA Order Entered October 4, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0354603-1993

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED MAY 24, 2023**

Daniel Gant appeals from the order denying his Post Conviction Relief Act ("PCRA")[1] petition. Gant contends his discovery of new evidence warrants a new trial, and alleges that the Commonwealth violated ***Brady v. Maryland***, 373 U.S. 83 (1963), by suppressing the evidence. We affirm.

In 1993, Gant and his cousin, Devere Gant ("Devere"), robbed Andrew Lewis and Shawn Nelson on a Philadelphia city street. An off-duty police officer, Anthony Haye, witnessed the robbery and intervened. A shootout ensued, during which Lewis was shot and killed. Gant and Devere escaped in a car driven by a third man. Gant was injured during the incident, and at the hospital he told a police officer that he had been robbed of his money and jewelry at the intersection of 13th Street and Carlisle Street. This roused the

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

suspicion of the police officer because that intersection does not exist, Gant was wearing expensive jewelry and still had money with him. The police brought the surviving victim, Nelson, to the hospital, who identified Gant as one of the robbers. Nelson later also identified Devere and the getaway driver, and Officer Haye identified Gant in a lineup. The police found Nelson's jacket inside Gant's girlfriend's home, and a ring belonging to Lewis inside the getaway car. Ballistics evidence showed that three guns had been fired at the scene and that Officer Haye's gun had not fired the bullets that had killed Lewis. **See** PCRA Court Opinion, filed 7/13/22, at 2-3.

The jury convicted Gant of first-degree murder, two counts of aggravated assault, two counts of robbery, criminal conspiracy, and possession of an instrument of crime. The court sentenced Gant to life imprisonment. We affirmed, and the Supreme Court denied allowance of appeal in 1996.[2] Gant thereafter filed multiple unsuccessful PCRA petitions.[3]

Gant filed the instant *pro se* petition on February 15, 2018. He thereafter retained counsel who filed an amended petition. Gant alleged that on December 17, 2017, he discovered that Nelson's real name is Wendell E. Betancourt. He alleged that Betancourt had moved from New York to the

---

[2] **See Commonwealth v. Gant**, No. 111 Philadelphia 1995 (Pa.Super. filed Feb. 7, 1996) (unpublished memorandum), *appeal denied*, 681 A.2d 176 (Table) (Pa. filed July 24, 1996).

[3] **See Commonwealth v. Gant**, No. 1544 EDA 2005 (Pa.Super. filed July 17, 2006) (unpublished memorandum); **Commonwealth v. Gant**, No. 245 EDA 1999 (Pa.Super. filed July 24, 2000) (unpublished memorandum), *appeal denied*, 766 A.2d 1244 (Table) (Pa., filed January 9, 2001).

Philadelphia area in the 1990's, and adopted the alias of Shawn Nelson, and began using a false birthday and social security number. Gant attached the affidavit of his fiancé, explaining how she made the discovery when researching a petition Nelson/Betancourt had filed in federal court. Gant argued that this constituted after-discovered evidence that would have undermined Nelson/Bentancourt's testimony if introduced at trial. Gant also raised a *Brady* claim based on the Commonwealth's alleged suppression of the evidence. Gant asserted his petition was timely under the newly-discovered fact exception and the governmental interference exception, and that he filed his petition within 60 days of his discovery of the new fact/evidence. *See* 42 Pa.C.S.A. § 9545(b)(1)(i-ii), (b)(2). The PCRA court dismissed the petition without a hearing.[4]

Gant appealed, and raises the following issues:

1. Should the [t]rial [c]ourt have granted [Gant's] request for an evidentiary hearing based on the newly discovered evidence claim?

2. Should the [t]rial [c]ourt have granted [Gant's] request for an evidentiary hearing based on the *Brady* claim?

Gant's Br. at 5 (suggested answers omitted, italics added).

Gant first argues that his discovery that Nelson/Betancourt used a false name and social security number warrants the grant of a new trial. He asserts that Nelson/Betancourt received favorable treatment from the Commonwealth

---

[4] The court first issued notice of its intent to dismiss the petition, in compliance with Pa.R.Crim.P. 907. Gant filed a timely response to the notice.

- 3 -

in exchange for his testimony in this case, by way of receiving several lenient sentences for violating his probation. *Id.* at 13. Gant argues the evidence of the false name and favorable treatment would have undermined Nelson/Betancourt's testimony, and there is a substantial likelihood that this would have changed the verdict, as there was no physical evidence linking him to the crime scene, and Officer Haye did not identify him until he was already in custody. *Id.* at 15.

Gant also argues that the Commonwealth violated *Brady* by failing to disclose Nelson/Betancourt's real name. He contends he could have used Nelson/Betancourt's use of an alias as impeachment evidence, asserting "the Commonwealth knew . . . or should have known" Nelson/Betancourt was using an assumed identity. *Id.* at 13, 17. Like his first issue, Gant argues the suppression of this information prejudiced him, because aside from Nelson/Betancourt's testimony, he alleges, the evidence linking him to the crime was tenuous. *Id.* at 17-18.

We review a PCRA court's determinations to ensure they are supported by the record and free of legal error. *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014). We will not disturb the PCRA court's credibility findings, when supported by the record, but apply a *de novo* standard of review to the PCRA court's legal conclusions. *Id.*

As a jurisdictional prerequisite to review, a PCRA petition must be timely. *Commonwealth v. Anderson*, 234 A.3d 735, 737 (Pa.Super. 2020). A PCRA petition must be filed within one year of the date that the judgment

of sentence becomes final or plead and prove one of the following three exceptions applies:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1). A petitioner claiming an exception based on a claim arising before December 24, 2017, must also plead and prove that he filed the petition within 60 days of the first date he could have presented his claim. *Id.* at (b)(2) (amended effective Dec. 24, 2018).[5]

The PCRA court held that the petition was "arguably" timely under the second exception, as Nelson/Betancourt's name was previously unknown to Gant, and he could not have ascertained it earlier. PCRA Ct. Op. at 5. The Commonwealth concedes the applicability of this exception. Commonwealth's Br. at 10. We find no reason to disturb the PCRA court's conclusions that Nelson/Betancourt's real name was previously unknown to Gant, he could not have ascertained it earlier by the exercise of due diligence, and he promptly

---

[5] For claims arising on or after December 24, 2017, the petitioner must file the petition within one year of when the claim could have first been presented. 42 Pa.C.S.A. § 9545(b)(2).

- 5 -

presented his claim once he made his discovery. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii).

However, to the extent that Gant's arguments involve bald allegations that Nelson/Betancourt received favorable treatment by the Commonwealth in exchange for his testimony, his claims are untimely. Gant does not state the date on which he discovered that Nelson/Betancourt received sentences of probation for his violations of probation or assert that he could not have discovered this information sooner through the exercise of due diligence. Nor is his petition timely under the first exception, as his allegations do not substantiate a claim of governmental interference. *See* 42 Pa.C.S.A. § 9545(b)(1)(i). Nelson/Betancourt's criminal history was publicly available, listed under the name "Nelson," and was thoroughly discussed during cross-examination. *See* PCRA Ct. Op. at 5, 7. The court also instructed the jury that it could consider that Nelson/Betancourt had a potential motive to testify favorably for the Commonwealth, due to his open violations of probation. *See id.* at 5-6. The "fact" of any favorable treatment for Nelson/Betancourt was neither new nor suppressed.

Turning to the merits of Gant's claims related to Nelson/Betancourt's true name, the court found that the claim failed because the evidence would have been used only to impeach Nelson/Betancourt's credibility. The court also found that it would not likely have resulted in a different verdict, given Officer Haye's corroborating testimony and the ballistics evidence, and the fact that Nelson/Betancourt had been impeached with a lengthy criminal

history, including possession of illegal drugs and firearms.[6] *Id.* The court also concluded that the ***Brady*** claim was meritless, because Gant had not provided proof that the Commonwealth knew and suppressed Nelson's real name, and the evidence was not exculpatory nor material, given the other evidence. *Id.* at 6-7.

We find no error in the PCRA court's analysis. The PCRA provides relief when a conviction results from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). However, "to successfully prove an after-discovered evidence claim under Section 9543(a)(2)(vi), the petitioner must show that '(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.'" ***Commonwealth v. Payne***, 210 A.3d

---

[6] As the PCRA Court explained,

> At [Gant's] trial, the Commonwealth discussed Nelson's criminal background on direct examination. This allowed three different defense attorneys to examine Nelson's background and criminal history. The jury was made aware that Nelson was currently on probation in New York for a gun possession charge, that he also was on probation in Pennsylvania for two related drug convictions and he was scheduled to go on trial in New Jersey for another drug case. The jury was well aware this witness was a person that possessed illegal drugs and firearms.

PCRA Ct. Op. at 5.

299, 302 (Pa.Super. 2019) (*en banc*) (quoting **Commonwealth v. Cox**, 146 A.3d 221, 228 (Pa. 2016)).

Here, Gant's new evidence claim fails under the third prong of this test, because the evidence would be offered solely to impeach Nelson/Betancourt's testimony. It also fails under the fourth prong — a likelihood of compelling a not-guilty verdict — given that Gant already cross-examined Nelson/Betancourt regarding his criminal history. The impeachment effect of Gant's use of an alias would have been minimal in comparison to Nelson/Betancourt's other dishonest activity. Moreover, Nelson/Betancourt's testimony was corroborated by Officer Haye, as well as the stolen items and ballistics evidence.

The PCRA also affords relief for **Brady** claims. **See** 42 Pa.C.S.A. § 9543(a)(2)(i) (providing relief when a conviction results from "[a] violation of of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"); **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa.Super. 2012). However, "[t]o establish a **Brady** violation, a defendant must show that: (1) the evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material, meaning that prejudice must have ensued." **Commonwealth v. McGill**, 832 A.2d 1014, 1019 (Pa. 2003).

The prejudice must be such as to undermine confidence in the outcome of the proceeding. *Id.* at 1020.

Here, while the information that Nelson/Betancourt was operating under an assumed identity could have added to Gant's impeachment of him, it is not the sort of information that undermines our confidence in the verdict, as it is insignificant in comparison with Nelson/Betancourt's other criminal history, which the jury heard. Moreover, as the PCRA court observed, Gant has failed to show that the Commonwealth suppressed this information. His mere allegation that the Commonwealth "should have known" Nelson/Betancourt's true name does not pass muster.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2023