J-S11029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAL D. KENNEDY SR. | : | |
| | : | |
| Appellant | : | No. 1423 EDA 2022 |

Appeal from the PCRA Order Entered May 2, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0015289-2009

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 06, 2023**

Chal D. Kennedy, Sr., appeals *pro se* from the order dismissing his Post Conviction Relief Act ("PCRA")[1] petition without a hearing. Kennedy argues the Commonwealth elicited false testimony at his trial and failed to disclose the results of the DNA and latent fingerprint testing of a firearm. Kennedy also asserts that the trial court violated his right to a speedy trial and that the PCRA court erred in failing to grant his motion for recusal. We affirm.

The PCRA court recounted the operative underlying facts as follows.

> . . . [Kennedy] and his son/co-defendant Kennedy, Jr. forced themselves into the victims' home after pretending to be house arrest officers. [Kennedy] held the victims and their children at gun point in their home, searched for valuables, and took money and jewelry. [Kennedy] was arrested inside the victims' home, sitting on the couch, with a loaded gun underneath him.

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

PCRA Court Opinion, filed September 15, 2022, at 6 ("1925(a) Op.").

Kennedy waived his right to counsel and represented himself at trial. Relevant to this appeal, police officer Jesus Cruz of the Firearms Identification Unit testified as a firearms expert. He stated that the firearms seized by the police during the incident were operable, and that the serial number on the firearm which was found under Kennedy was defaced. **See** N.T., 10/22/13, at 189-217. Officer Cruz also testified that he had submitted the firearm for DNA and fingerprint testing:

> [Prosecutor]: Now, you made a note underneath. What does your note indicate?
>
> [Officer Cruz]: Items on Property Receipt No. 2871987 was submitted for latent examination on December 24th, 2009, and returned January 19th, 2010. So everything that was submitted on Property Receipt No. 2871987 was submitted for DNA and latent prints.
>
> [Prosecutor]: What was it submitted for?
>
> [Officer Cruz]: It was submitted for DNA and latent prints.
>
> [Prosecutor]: What did you actually --
>
> [Officer Cruz]: Well, here it actually says for latent examination. That's what we use. But that's what they [sic] supposed to do upstairs.
>
> [Prosecutor]: Okay. And that gets to crime scene to do what their examination is going to be?
>
> [Officer Cruz]: Exactly.
>
> [Prosecutor]: And, again, was that before you test-fired both of those firearms?
>
> [Officer Cruz]: Yes. Everything was submitted to firearms before I test-fired [the] weapons.

N.T., 10/22/13, at 210-11. Kennedy cross-examined Officer Cruz regarding the DNA/fingerprint testing as follows:

> [Kennedy]: Good afternoon, Officer Cruz.
>
> [Officer Cruz]: Good afternoon, sir.
>
> [Kennedy]: How are you, sir? Are you responsible for sending these weapons out to be fingerprinted?
>
> [Officer Cruz]: If it's requested by either a district attorney, private counsel or even Your Honor here, we submit it to crime scene. Yes, sir.
>
> [Kennedy]: Okay. And how about DNA testing, same thing?
>
> [Officer Cruz]: Yes. It's all submitted to crime scene. It was submitted to crime scene for DNA and latent because that's what they do upstairs at crime scene.
>
> [Kennedy]: Okay. All right. Thank you. . . . No further questions.

*Id.* at 217.

Officer Charles Yeager, who had recovered the firearm in question from the scene, also testified to the altered condition of the serial number. N.T., 10/21/13, at 30-31. On cross-examination, Kennedy asked Officer Yeager whether the firearm was ever tested for fingerprints or DNA. Officer Yeager responded, "No." *Id.* at 57. The Commonwealth did not introduce the results of any DNA or fingerprint testing of this firearm into evidence, and in his closing argument, Kennedy argued that the Commonwealth's evidence was not credible because the police had not tested the firearm for his fingerprints or DNA. N.T., 10/23/13, at 55 ("And my question also is why did you not fingerprint the weapon that you said belonged to me? Why? Why didn't you do a DNA test?").

The jury convicted Kennedy of five counts each of robbery, unlawful restraint, and false imprisonment, and one count each of aggravated assault, burglary, criminal conspiracy, possession of an instrument of crime, carrying a firearm without a license, possession of a firearm with an altered manufacturer's number, and possession of a firearm prohibited.[2] The court sentenced him to 50 to 100 years' imprisonment. We affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal in August 2016.[3] Kennedy thereafter filed two PCRA petitions, in 2017 and 2020, neither of which resulted in relief.[4]

Kennedy filed the instant petition *pro se* on August 24, 2021. In it, he alleged that on August 16, 2021, the Commonwealth had provided him with copies of racist social media postings that Officer Cruz made two years after Kennedy's trial. Kennedy claimed that the information constituted after-discovered evidence and evidence of a ***Brady***[5] violation. PCRA Pet., 8/24/21, at 3. He alleged that Officer Cruz had committed misconduct, manufactured evidence, and offered false testimony. ***Id.*** at 3-4; ***see also id.*** at 8 (alleging

---

[2] 18 Pa.C.S.A. §§ 3701, 2902, 2903, 2702, 3502, 903, 907, 6106, 6110.2, and 6105, respectively.

[3] ***See Commonwealth v. Kennedy***, No 1262 EDA 2014, 2016 WL 1120051 at *5 (Pa.Super. 2016), *appeal denied*, No. 165 EAL 2016 (Pa. 2016).

[4] Kennedy appealed from the denial of relief on his first PCRA petition, and we affirmed. ***See Commonwealth v. Kennedy***, No. 193 EDA 2018, 2019 WL 1785681 (Pa.Super. 2019), *appeal denied*, No. 425 EAL 2019 (Pa. 2020).

[5] ***See Brady v. Maryland***, 373 U.S. 83 (1963).

"Officer Cruz not only testified at [Kennedy's] trial but he in fact handled sensitive evidence that was used to persuade the [j]udge and jur[y] [and] booster [the] case against [him]").

Kennedy also filed a motion for discovery and an amended motion for discovery. He requested any information regarding Officer Cruz's involvement in his case, and the results of any DNA and fingerprint testing of the evidence in his case.

Kennedy also filed a motion for recusal and an amended motion for recusal. He claimed the court demonstrated bias by continuing his trial for three and a half years and then denying him a hearing on his right to a speedy trial. He claimed the court had failed to respond to a previous subpoena and motion to compel for the "daily runsheets" he needed to prove the speedy trial violation. Mot. for Recusal, 5/10/21. at 1.

The Commonwealth filed an answer. In relevant part, it stated that in response to Kennedy's discovery motions, it mailed him a copy of the Firearms Investigation Unit report regarding the firearm that was found under Kennedy, that Officer Cruz had examined. The Commonwealth stated that it had already provided a copy of the report to Kennedy during pretrial discovery. It stated it also sent Kennedy a copy of a page of handwritten notes by the prosecutor regarding Officer Cruz. The Commonwealth asserted that the firearm recovered from under Kennedy had never been tested for DNA or fingerprints, and therefore there were no test results to disclose. Commonwealth's Answer, 2/1/22, at 10.

The court issued notice of its intent to dismiss the petition. *See* Pa.R.Crim.P. 907. Kennedy responded, generally arguing that Officer Cruz was biased against him and had given false testimony. The court dismissed the petition.

Kennedy appealed. In his Rule 1925(b) statement of errors, Kennedy raised that the Commonwealth had intentionally elicited false testimony from Officer Cruz and had knowingly suppressed the results of DNA/fingerprint testing of the firearm, and that the PCRA court should have granted his motion for recusal based on its violation of his speedy trial rights.

In its Rule 1925(a) opinion, the court explained that it found Kennedy's petition timely under the new facts exception, citing the racist social media postings the Commonwealth had recently provided to Kennedy. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii).

The court nonetheless found the petition lacked merit. Regarding the after-discovered evidence claim, the court concluded Kennedy had failed to show that the racist social media postings would compel a different verdict if a new trial was granted. 1925(a) Op.at 4-5. The court observed that Officer Cruz testified solely regarding "the make, model, and operability" of the recovered firearm, and its obliterated serial number. *Id.* at 4. It noted that Officer Cruz had not investigated Kennedy's case, interviewed witnesses, executed any search warrants, or made any arrests. *Id.* It also noted that Officer Cruz's testimony regarding the serial number was corroborated by Officer Charles Yeager, who had responded to the scene. *Id.* at 5.

- 6 -

As for the *Brady* claim, the PCRA court found it was meritless because Kennedy had not proven that the Commonwealth withheld any information about Officer Cruz at the time of trial. *Id.* at 6. It pointed out that the offensive social media postings were made two years after Kennedy's trial. *Id.* It also found the postings were not material evidence of Kennedy's guilt or innocence, and that the evidence of guilt adduced at trial was overwhelming. *Id.*

Regarding the additional claims Kennedy included in his Rule 1925(b) petition—that the Commonwealth had suppressed the results of DNA/fingerprint evidence, and that the court had violated his speedy trial rights—the PCRA court noted that these claims were unsubstantiated by the record and untimely. *Id.* at 3 n.1.

Kennedy presents the following issues:

[1.] Did the prosecutor put forth prejudicial and false evidence to obtain a tactical advantage over the petitioner[?]

[2.] Did the PCRA court deny petitioner a hearing on DNA evidence[?]

[3.] Did the trial court abuse [its] discretion by pushing petitioner's trial back on to [its] docket thereby denying him a fair and impartial trial[?]

Kennedy's Br. at 2 (unpaginated) (unnecessary capitalization and answers below omitted).

"When reviewing the denial of a PCRA petition, this Court's standard of review is limited to whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error." *Commonwealth v.*

*Hart*, 199 A.3d 475, 481 (Pa.Super. 2018) (quotation marks and citation omitted). "[W]hen there are no disputed factual issues, an evidentiary hearing is not required." *Id.* (citation omitted) (alteration in original).

Kennedy's first two issues are interrelated. He first argues that the Commonwealth violated *Brady* by withholding exculpatory DNA and latent fingerprint evidence. Kennedy's Br. at 5. He also argues that the Commonwealth violated *Brady* by knowingly allowing Officer Cruz to offer false testimony; however, the only testimony Kennedy highlights is Officer Cruz's testimony that the firearm had been submitted for DNA and fingerprint testing. *Id.*[6] Kennedy claims that because Officer Cruz testified that the firearm was submitted for this testing, but no results were produced, the PCRA court should have held an evidentiary hearing. *Id.* at 7.

We find these issues waived by Kennedy's failure to present them to the PCRA court. *See* Pa.R.A.P. 302 (issues not presented to the court below are waived). Kennedy's petition revolved around the racist social media posts that Officer Cruz made two years after Kennedy's trial. The first time he claimed that the Commonwealth had failed to turn over results of DNA or fingerprint testing was in his Rule 1925(b) statement. And, while his PCRA petition generally suggested that Officer Cruz's testimony was of questionable

---

[6] We note the contradiction between Kennedy's assertions that the Commonwealth suppressed the results of the DNA/fingerprint testing and that Officer Cruz's testimony that the firearm was tested for DNA/fingerprint evidence was false.

veracity, he never argued that a new trial was warranted because Officer Cruz had testified that the firearm had been tested for DNA/latent fingerprints.

Even if Kennedy had raised these issues to the PCRA court, he would be due no relief, as these claims are untimely. Any PCRA petition must be filed within one year of the date the judgment of sentence becomes final, unless the petitioner pleads and proves one of three statutory timeliness exceptions. *See* 42 Pa.C.S.A. § 9545(b)(1). Only two exceptions could conceivably apply here. The first is for instances in which "government officials" have interfered with the presentation of a claim. *See id.* at § 9545(b)(1)(i). The second exception applies when the facts on which the claim is based were unknown to the petitioner and he could not have learned them earlier, despite the exercise of due diligence. *Id.* at § 9545(b)(1)(ii).[7]

Here, Kennedy was on notice at the time of trial that there was a discrepancy between Officer Cruz's testimony that he had submitted the firearm for DNA/latent fingerprint testing, and Officer Yeager's testimony that no such testing had occurred. No DNA/fingerprint results for this firearm were provided to Kennedy during pretrial discovery, introduced at trial, or produced in response to Kennedy's recent motion for discovery, and Kennedy has not provided any new evidence to support his assertion that any results exist. Nor has Kennedy alleged any facts to suggest that the Commonwealth prevented

---

[7] The third exception, that the claim is based on a newly recognized constitutional right, is wholly inapplicable in this scenario. *See* 42 Pa.C.S.A. § 9545(b)(1)(iii).

him from pursuing a claim regarding the lack of test results until now. Rather, Kennedy made the lack of test results part of his defense theory.

Thus, any assertion of the governmental interference or unknown facts exception would have failed. The PCRA court therefore could not have entertained these claims, even if Kennedy had presented them to the PCRA court. *See Commonwealth v. Anderson*, 234 A.3d 735, 737 (Pa.Super. 2020) (stating that if a PCRA petition is untimely, neither PCRA court nor appellate court has jurisdiction to address the substantive claims).

In his third issue, Kennedy argues that the trial court pushed his trial date back, violating his right to a speedy trial. He contends his motion for recusal raised this issue, arguing the PCRA court "allowed this case to fester for years notwithstanding [its] biasness [sic] toward [Kennedy] throughout the pendency of these cases." Kennedy's Br. at 7. He maintains that this claim is timely under the PCRA's governmental interference exception, because "the government interfered with his ability to properly prepare his case for collateral review." *Id.*

Assuming, *arguendo*, that Kennedy preserved this claim by including it in his recusal motion, Kennedy has failed to prove that his speedy trial claim and related allegations of bias were timely under the governmental interference exception. He has not alleged any facts to suggest that the court prevented him from pursuing a speedy trial claim or recusal prior to the instant PCRA proceeding. Nor are these claims timely under the newly discovered fact exception, as Kennedy has not presented any newly discovered evidence to

substantiate his speedy trial and bias claims. Moreover, the underlying speedy trial claim failed on direct appeal. We found he had failed to substantiate his assertions that the court had violated his right to a speedy trial and that the court had denied him the opportunity to present evidence or argument on this issue. **See Kennedy**, 2016 WL 1120051, at *10.

As Kennedy's argument for recusal hinges solely on the claim that the court violated his right to a speedy trial, Kennedy has failed to demonstrate that the PCRA court should have granted his recusal motion. **See Commonwealth v. Dip**, 221 A.3d 201, 206 (Pa.Super. 2019) ("It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially") (citation omitted). We therefore affirm the order of the PCRA court dismissing his petition.

Order affirmed.

Judge King joins the memorandum.

Judge Olson concurs in the result.
*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>7/6/2023</u>